FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAURA FRECHETTE,

    Plaintiff,

vs.

Case No.: 8:19-cv-00037-T-23JSS

NATIONAL CREDIT SYSTEMS, INC.,
EXPERIAN INFORMATION SOLUTIONS, INC.,
EQUIFAX, INC. and
TRANS UNION, LLC,

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LAURA FRECHETTE, by and through her undersigned attorney, sues Defendants, NATIONAL CREDIT SYSTEMS, INC., EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX, INC. and TRANS UNION, LLC and states:

### JURISDICTION AND VENUE

1. This is an action for monetary damages and other relief brought by Plaintiff, LAURA FRECHETTE ("Frechette") in relation to the use of abusive, deceptive and/or unfair debt collection practices in violation of 15 U.S.C. § 1692 ("FDCPA"), 47 U.S.C § 227 ("TCPA") and Fla. Stat. § 559.72 ("FCCPA") as well as false and/or incomplete statements made by the Defendants, NATIONAL CREDIT SYSTEMS, INC. ("NCS"), EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX, INC. and TRANS UNION, LLC that were reported to credit reporting agencies in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question based on the FDCPA, TCPA and FCRA claims) and § 1367(a) (supplemental).

Page **1** of **19**

$400.00
TPA054761

3. Frechette is a resident of Sarasota County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(8).

4. NCS is a corporation with its headquarters located in Atlanta, Georgia and does business in the State of Florida. NCS engages in the regular practice of collection activity and furnishing information pertaining to its customer's credit accounts to credit reporting agencies.

5. BEL CALIBRE HOLDINGS, LLC ("BCH") is a limited liability company headquartered in Boston, Massachusetts and does business in the State of Florida. BCH owns Central Parkway Apartments, a residential apartment complex located at 599 Celibre Crest Parkway, Altamonte Springs, FL 32714 (the "Apartment").

6. TRANS UNION, LLC ("Trans Union") is limited liability company headquartered in Chicago, IL and engages in interstate commerce including credit reporting services in the State of Florida. Trans Union is a consumer credit reporting agency as defined by 15 U.S.C. § 1681a(f).

7. EQUIFAX, INC. ("Equifax") is a corporation headquartered in Atlanta, GA and engages in interstate commerce including credit reporting services in the State of Florida. Equifax is a consumer credit reporting agency as defined by 15 U.S.C. § 1681a(f).

8. EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is a corporation headquartered in Costa Mesa, CA and engages in interstate commerce including credit reporting services in the State of Florida. Experian is a consumer credit reporting agency as defined by 15 U.S.C. § 1681a(f).

9. Trans Union, Equifax and Experian will hereinafter collectively be

referred to as the "Credit Reporting Agencies."

10. Venue is proper in the Tampa Division of the United States District Court for the Middle District of Florida under 28 U.S.C. § 1391(b) and Middle District of Florida Local Rule 1.02(b)(4) because, among other things, a substantial part of the events or omissions giving rise to this action occurred in Sarasota County, Florida.

## STATEMENT OF FACTS

### The Apartment Rental

11. Frechette entered into a residential lease agreement with BCH for the rental of an apartment unit located at 586 Calibre Crest Parkway Apartment #103, Altamonte Springs, FL 32714 (the "Agreement"). See Exhibit "1."

12. The Agreement prohibited aggressive dog breeds on the Apartment premises. All lease agreements at the Apartment contained the same such prohibition. The prohibition was in place for the protection of the individuals residing at the Apartment property.

13. Notwithstanding the prohibition, the Apartment allowed Pit Bulls and other aggressive dogs to reside in Apartment units. One dog, known by the Apartment to be aggressive, attacked Frechette during the pendency of her Agreement. Following the attack, the Apartment, acting with full knowledge of the attack and the location of the aggressive dog, permitted the dog to continue to reside within the Apartment property thus violating its own rule prohibiting aggressive dog breeds and endangering the safety of Frechette.

14. Following the Apartment's decision not to have the aggressive dog removed from the Apartment premises, which was a breach of the Agreement, Frechette

requested that the Apartment permit her to terminate the Agreement early without penalty. Frechette disputed the Apartment's entitlement to any alleged damages relating to an early termination of the Agreement and requested that BCH not report any alleged entitlement of damages to the credit reporting agencies.

15. Frechette, due to safety concerns, left the Apartment prior to the termination of the Agreement. Frechette received a notice of intention to impose a claim of damages against her in the amount of $1,789.79 including "accelerated rent" of $1,679.16, additional rent in the amount of $15.49 and utility reimbursement in the amount of $95.14 (the "Claim"). See Exhibit "2."

16. BCH was not permitted to impose a claim for damages against Frechette as BCH had breached the Agreement and the Apartment rules thus subjecting Frechette to grave danger. The breach was material and thus Frechette had the right to terminate the Agreement without penalty and to relocate to a new apartment away from the aggressive dog that attacked her.

17. Even if BCH were permitted to impose a claim of damages against Frechette, it did not impose the proper claim of damages pursuant to the Agreement. The Agreement provides a liquidated damage provision for the early termination of the Agreement affording BCH the right to liquidated damages in the amount of $1,800.00. Instead of attempting to recover liquidated damages from Frechette, BCH, according to its own notice, is attempting to recover lost rent damages that were not negotiated in the Agreement. Thus, BCH is attempting to collect on a type of damages that are not recoverable against Frechette; both because it breached the Agreement and because it is seeking actual damages as opposed to liquidated damages.

## Collection Action/Credit Reporting

18. Following Frechette's termination of the Agreement, BCH initiated a collection campaign against her that was in violation of numerous federal and state consumer protection laws.

19. BCH transferred its alleged entitlement to the Claim to NCS and/or retained NCS as its agent to assist it in attempting to collect on the Claim.

20. On or about the first week of August, 2017, Frechette received a phone call on her cell phone from what appeared to be a Rhode Island telephone number (401-366-6117) ("Phone Call 1"). Frechette picked up the phone call and stated "hello" and then heard a long pause on the line. Frechette then heard a click sound and a person suddenly came onto the line and indicated that she was calling from NCS and that if Frechette didn't pay the Claim within 65 days, that it would initiate negative credit reporting against her.[1]

21. Despite the Phone Call 1 phone number showing a Rhode Island area code on Frechette's caller ID, NCS is located in Atlanta, GA and conducts its collection activity from GA.

22. Prior to receiving Phone Call 1, Frechette had not received any written notification that the alleged Claim had been transferred by BCH to NCS or that NCS was permitted by BCH to attempt to collect on the Claim.

23. Prior to receiving Phone Call 1, Frechette had never given the Apartment, BCH or NCS permission to contact her on her cellular phone.

24. Following Phone Call 1, Frechette called back NCS and informed a "Ms.

---

[1] After signing the Agreement and prior to terminating same, Frechette received notice from the Apartment that it decided to start reporting to the credit reporting agencies for the benefit of the residents.

Taylor" that she disputed the debt and requested verification of same.

25. Following Phone Call 1, Frechette obtained counsel with the Jodat Law Group to represent her in the collection action. Frechette called "Ms. Taylor" at 401-366-6117 ext. 113 to provide notice to NCS that she was represented and to provide NCS with her attorney's name and contact information ("Phone Call 2").

26. Following Phone Call 2 wherein notice of representation was provided to NCS, Frechette received a letter from NCS that it would begin negatively reporting the Claim to credit reporting agencies ("Letter 1"). Shortly following Letter 1, NCS did in fact begin negatively reporting the Claim to credit reporting agencies.

27. Frechette's credit score as reported by the Credit Reporting Agencies decreased substantially from the upper 600s to the low 600s following the reporting of the Claim.

28. At no time has BCH or NCS sued Frechette and obtained a final judgment against her relating to the Claim. The Claim has at all times been disputed.

29. Following the negative credit reporting of the Claim by NCS to the Credit Reporting Agencies, Frechette initiated dispute claims with each of the Credit Reporting Agencies disputing the validity of the Claim.

30. On or about May 15, 2018, NCS sent a letter to Frechette directly while it knew that Frechette was represented by counsel ("Letter 2"). Letter 2 indicated that she was required to pay $500.00 to a creditor titled "SURE DEPOSIT/CENTRAL PARKWAY APTS/4207263." The letter made reference to an unknown account bearing Account #XXX9019. See Exhibit "3."

31. Additionally, on or about May 15, 2018, NCS sent a separate letter to

Frechette directly, despite her being represented by counsel, demanding payment in the amount of $1,289.79 for a creditor titled "CENTRAL PARKWAY APTS/586-103" and referencing an account bearing the number XXX9018 ("Letter 3"). See Exhibit "4."

32. Letter 2 and Letter 3 allegedly pertained to two separate accounts with Central Parkway Apts. despite the Apartment's only having alleged entitlement to the Claim in the amount of $1,789.79.

33. On or about January 8, 2018, NCS sent a letter to Frechette directly while she was represented by counsel and attempted to collect on the Claim specified to hold a balance of $1,789.79 ("Letter 4"). Letter 4 made reference to a creditor "CENTRAL PARKWAY APTS/86-103" and made reference to an unknown account bearing Account #XXX2077. See Exhibit "5."

34. On or about January 13, 2018, Frechette – while still represented by counsel – received an additional letter from NCS indicating that it was going to sue her, garnish her wages, put liens or seize and sell her personal property ("Letter 5").

35. At the time Frechette received Letter 5, she had still not been provided any verification of the Claim and that NCS had the right to collect on the alleged debt of which the Claim was comprised.

36. Following the illegal reporting of the invalid Claim to the Credit Reporting Agencies, Frechette applied for an automobile loan and was denied credit by numerous creditors including Kia Automotive. The creditors informed Frechette that the denials of credit were made after a review of her credit reports.

37. Experian and Equifax refused to remove the disputed Claim information from Frechette's credit reports after she initiated her dispute over same.

38. On or about June 28, 2018 and November 9, 2018, Frechette demanded in writing that each Credit Reporting Agency provide her with any and all documentation relied upon during their investigation. None of the Credit Reporting Agencies responded to and/or complied with Frechette's request for documents pertaining to their investigation of the disputed Claim and related credit reporting.

39. Experian is reporting the Claim in various false and misleading ways including reporting that:

   a. The Claim as five separate trade lines which is absolutely misleading and false;

   b. Varying balances allegedly past due which do not equal the liquidated damage allegedly owed or the $1,789.79 allegedly owed;

   c. The credit limit of the Claim is $1,789 but is reporting a balance owed of amounts ranging from $500 to $3,350;

   d. A balance has been owed to NCS since August of 2016 in the amount of $2,497 despite indicating that the Claim was $1,789 past due as of July of 2018;

   e. Litigation is pending with respect to the Claim which is and has always been false.

40. All of this information being reported by Experian is wholly inaccurate, and hence misleading.

41. Transunion is reporting the Claim in various false and misleading ways including reporting that:

   a. It is reporting two separate "Accounts" allegedly owed to NCS that were

opened on two separate dates, one in the amount of $1.289 opened on May 9, 2018 and another in the amount of $1,789 opened on October 10, 2017

42. Equifax is reporting the Claim in various false and misleading ways including reporting that:

    a. It is reporting two separate "Accounts" allegedly owed to NCS that were opened on two separate dates, one in the amount of $1.289 opened on May 9, 2018 and another in the amount of $1,789 opened on October 10, 2017.

43. Following Frechette's dispute of the Claim with the Credit Reporting Agencies, NCS failed to provide a good faith, reasonable investigation into the credit reporting dispute.

44. NCS's investigation was performed by employees who lacked knowledge of complete information pertaining to the Claim and who failed to obtain or attempt to obtain complete information about the Claim. Nonetheless, the employees of NCS made conclusions and assumptions pertaining to the Claim that were inaccurate and continued to report the inaccurate information to the Credit Bureaus.

45. NCS either did not have an FCRA procedure in place for the reasonable handling of credit reporting dispute claims or did not follow its procedure such that a reasonable investigation of Frechette's dispute was not performed.

46. NCS failed to provide the Credit Reporting Agencies with complete documentary support of its investigative findings thus forcing the Credit Reporting Agencies to rely on incomplete and incorrect information in reporting the Claim information.

47. Frechette has retained the law firm of Moran, Sanchy & Associates to

represent her in this action and is obligated to pay Moran, Sanchy & Associates reasonable attorney's fees for its services.

48.     All conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

### COUNT I – CLAIM FOR VIOLATION OF 47 U.S.C. § 227

49.     Plaintiff re-alleges paragraphs 1-48 above as though set forth fully.

50.     This claim is brought against NCS for violating 47 U.S.C. §§227(b)(1)(A) and (e)(1).

51.     Upon information and belief, NCS used an automatic telephone dialing system ("ATDS") to contact Frechette in regard to the Claim when it made Phone Call 1. Frechette has personal and business expertise with respect to the functioning of ATDS and is aware that the pause and click transition sound pertain to an automatic dialer that then connects to an actual person once the call is received and responded to.

52.     Additionally, upon information and belief, NCS caused the caller identification service to knowingly transmit misleading or inaccurate caller identification information to Frechette when it made Phone Call 1 as Phone Call 1 appeared to be a call from a Rhode Island phone number despite being a phone call from Atlanta. The Rhode Island phone number area code was intentionally used by NCS to induce Frechette to answer the call based on her personal connections to individuals in Rhode Island.

53.     The manipulation of the caller identification relating to Phone Call 1 was made for the sole purpose of defrauding, causing harm and/or wrongfully obtaining the value of the Claim from Frechette.

WHEREFORE, Frechette requests judgment be entered against NCS for damages

including but not limited to statutory damages, pre-judgment and post-judgment interest, attorney's fees, costs, injunctive relief and any such other relief as this Court deems just.

## COUNT II –CLAIM FOR VIOLATION OF FLA. STAT. § 559.72

54. Plaintiff re-alleges paragraphs 1-48 above as though set forth fully.

55. This claim is brought against NCS for violation of Fla. Stat. § 559.72(3)&(18).

56. NCS conveyed to Frechette that it would disclose to the Credit Reporting Agencies that Frechette owed money on the Claim and did not disclose to the Credit Reporting Agencies that Frechette had disputed the Claim in writing which is a violation of Fla. Stat. § 559.72(3)&(6).

57. NCS intentionally and/or recklessly communicated to Frechette on multiple occasions in an attempt to collect money pertaining to the Claim despite having been provided notice that Frechette had retained counsel to represent her in all matters with respect to the Claim in violation of Fla. Stat. § 559.72(18). NCS made these communications without the consent of Frechette's counsel.

WHEREFORE, Frechette requests judgment be entered against NCS for damages including but not limited to statutory damages, pre-judgment and post-judgment interest, attorney's fees, costs, injunctive relief and any such other relief as this Court deems just.

## COUNT III –CLAIM FOR VIOLATION OF 15 U.S.C. § 1692

58. Plaintiff re-alleges paragraphs 1-48 above as though set forth fully.

59. This claim is brought against NCS for violation of 15 U.S.C. § 1692.

60. NCS conveyed to Frechette that it would disclose to the Credit Reporting Agencies that Frechette owed money on the Claim and did not disclose to the Credit

Reporting Agencies that Frechette had disputed the Claim in writing which is a violation of 15 U.S.C. § 1692e(8).

61. NCS intentionally and/or recklessly communicated to Frechette on multiple occasions in an attempt to collect money pertaining to the Claim despite having been provided notice that Frechette had retained counsel to represent her in all matters with respect to the Claim in violation of 15 U.S.C. § 1692c(a)(2)&(c). NCS made these communications without the consent of Frechette's counsel.

62. NCS failed to provide Frechette with proper notice of debt within five days after its initial communication with her in violation of 15 U.S.C. § 1692g(b). Following Frechette's disputing the Claim, NCS failed and refused to obtain and provide Frechette with verification of the debt that included the name and address of the original creditor and a copy of the verification.

WHEREFORE, Frechette requests judgment be entered against NCS for damages including but not limited to statutory damages, pre-judgment and post-judgment interest, attorney's fees, costs, injunctive relief and any such other relief as this Court deems just.

## COUNT IV –CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT

63. Plaintiff re-alleges paragraphs 1-48 above as though set forth fully.

64. This claim is brought against NCS for deprivation of Frechette's rights afforded to her pursuant to 15 U.S.C. 1681s-2(b) the Fair Credit Reporting Act ("FCRA").

65. NCS made false and/or incomplete written communications about Frechette to the Credit Reporting Agencies that negatively affected and are continuing to negatively affect Frechette's consumer creditworthiness, credit standing, credit capacity,

character and/or reputation. The communications were used to establish Frechette's eligibility for personal credit.

66. NCS knew or should have known that the false and/or incomplete communications about Frechette to the Credit Reporting Agencies were false at the time they were made.

67. NCS's false and/or incomplete communications about Frechette that were furnished to the Credit Reporting Agencies were a result of NCS failing to follow reasonable procedures to assure maximum possible accuracy and failure to correct inaccurate or incomplete information in violation of 15 U.S.C. § 1681s-2(b).

68. Frechette notified the Credit Reporting Agencies of NCS's false and/or incomplete communications and the Credit Reporting Agencies allegedly conducted an inquiry into the dispute. NCS performed a deficient and unreasonable investigation into the dispute pertaining to the Claim and continued to report inaccurate information to the Credit Reporting Agencies.

69. Had NCS performed a reasonable investigation of the disputed Claim, it would have corrected its reporting by not reporting the Claim or reporting the Claim information to reflect that the Claim was disputed, not in litigation had an alleged balance of $1,789.79, did not pertain to multiple accounts and was only alleged to have existed as of the date of termination of the Agreement.

70. Frechette also notified NCS of its false and/or incomplete communications about her and NCS failed to take proper and complete corrective action and failed to provide a reasonable reinvestigation.

71. NCS's failure to conduct a reasonable investigation into the Claim credit

reporting dispute and resulting false communications about Frecehtte to the Credit Reporting Agencies caused Frechette harm as she has been denied extensions of credit by multiple financial organizations due in whole or in part to the false negative reporting by NCS.

72. Additionally, credit that has been offered to and/or extended to Frechette has been extended at a rate higher than it would have been at had NCS conducted a reasonable investigation into the credit dispute and corrected its false reporting to the Credit Reporting Agencies.

WHEREFORE, Frechette requests judgment be entered against NCS for damages including but not limited to loss relating to denial of credit, more expensive credit, damage to his reputation, worry, fear, distress, frustration, embarrassment, pre-judgment and post-judgment interest, attorney's fees, costs, injunctive relief and any such other relief as this Court deems just.

## COUNT V –CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT

73. Plaintiff re-alleges paragraphs 1-48 above as though set forth fully.

74. This claim is brought against Experian for deprivation of Frechette's rights afforded to her pursuant to the Fair Credit Reporting Act ("FCRA").

75. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

76. On numerous occasions, Experian has prepared a patently false consumer report concerning Frechette that has misrepresented her and her creditworthiness.

77. Experian received notice from Frechette that NCS was reporting false information to it and the information displayed on her credit report with Experian contained false information.

78. Upon receiving this notice from Frechette, Experian failed to conduct a reasonable investigation and to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Frechette in violation of 15 U.S.C. § 1681e(b).

79. As a result of Experian's unreasonable and wholly deficient investigation it failed to discover that the information from NCS was false information and that the information being reported on Frechette's credit report contained false and inconsistent information.

80. Frechette has sustained damages resulting from Experian's misreporting of her credit information based on its negligent, reckless, and/or intentional refusal to provide a reasonable investigation of the Claim. Frechette is not free to take advantage of various credit opportunities available to other consumers because of Experian's misreporting, has been denied credit and/or has had to take out credit that is more expensive than it would have been had Experian reported accurately. Further, Frechette has had to incur the costs of a credit monitoring system.

81. Frechette's damages are a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA.

WHEREFORE, Frechette requests judgment be entered against Experian for damages including but not limited to loss relating to denial of credit, more expensive

credit, damage to his reputation, worry, fear, distress, frustration, embarrassment, pre-judgment and post-judgment interest, attorney's fees, costs, injunctive relief and any such other relief as this Court deems just.

## COUNT VI –CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT

82. Plaintiff re-alleges paragraphs 1-48 above as though set forth fully.

83. This claim is brought against Transunion for deprivation of Frechette's rights afforded to her pursuant to the Fair Credit Reporting Act ("FCRA").

84. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

85. On numerous occasions, Transunion has prepared a patently false consumer report concerning Frechette that has misrepresented her and her creditworthiness.

86. Transunion received notice from Frechette that NCS was reporting false information to it and the information displayed on her credit report with Transunion contained false information.

87. Upon receiving this notice from Frechette, Transunion failed to conduct a reasonable investigation and to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Frechette in violation of 15 U.S.C. § 1681e(b).

88. As a result of Transunion's unreasonable and wholly deficient investigation it failed to discover that the information from NCS was false information

and that the information being reported on Frechette's credit report contained false and inconsistent information.

89. Following Transunion's alleged investigation of the Claim, Frechette requested that it provide her with all documents that it relied upon in making the decision to continue reporting false information about her on her credit report. Transunion ignored Frechette's request and failed to provide any information that it obtained and/or relied upon relating to its decision to continue reporting the Claim information.

90. Frechette has sustained damages resulting from Transunion's misreporting of her credit information based on its negligent, reckless, and/or intentional refusal to provide a reasonable investigation of the Claim. Frechette is not free to take advantage of various credit opportunities available to other consumers because of Transunion's misreporting, has been denied credit and/or has had to take out credit that is more expensive than it would have been had Transunion reported accurately. Further, Frechette has had to incur the costs of a credit monitoring system.

91. Frechette's damages are a direct and proximate result of Transunion's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA.

WHEREFORE, Frechette requests judgment be entered against Transunion for damages including but not limited to loss relating to denial of credit, more expensive credit, damage to his reputation, worry, fear, distress, frustration, embarrassment, pre-judgment and post-judgment interest, attorney's fees, costs, injunctive relief and any such other relief as this Court deems just.

## COUNT VII –CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT

92. Plaintiff re-alleges paragraphs 1-48 above as though set forth fully.

93. This claim is brought against Equifax for deprivation of Frechette's rights afforded to her pursuant to the Fair Credit Reporting Act ("FCRA").

94. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

95. On numerous occasions, Equifax has prepared a patently false consumer report concerning Frechette that has misrepresented her and her creditworthiness.

96. Equifax received notice from Frechette that NCS was reporting false information to it and the information displayed on her credit report with Equifax contained false information.

97. Upon receiving this notice from Frechette, Equifax failed to conduct a reasonable investigation and to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Frechette in violation of 15 U.S.C. § 1681e(b).

98. As a result of Equifax's unreasonable and wholly deficient investigation it failed to discover that the information from NCS was false information and that the information being reported on Frechette's credit report contained false and inconsistent information.

99. Frechette has sustained damages resulting from Equifax's misreporting of her credit information based on its negligent, reckless, and/or intentional refusal to

provide a reasonable investigation of the Claim. Frechette is not free to take advantage of various credit opportunities available to other consumers because of Equifax's misreporting, has been denied credit and/or has had to take out credit that is more expensive than it would have been had Equifax reported accurately. Further, Frechette has had to incur the costs of a credit monitoring system.

100.   Frechette's damages are a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA.

WHEREFORE, Frechette requests judgment be entered against Equifax for damages including but not limited to loss relating to denial of credit, more expensive credit, damage to his reputation, worry, fear, distress, frustration, embarrassment, pre-judgment and post-judgment interest, attorney's fees, costs, injunctive relief and any such other relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all counts.

**MORAN, SANCHY & ASSOCIATES**
1800 Second Street, Suite 830
Sarasota, Florida 34236
P: (941) 366-1800
F: (941) 954-7101

*/s/ Don Cahall*

**Don R. Cahall – Trial Counsel**
Florida Bar No. 0110578
E-mail: dcahall@moransanchylaw.com
*Attorneys for Plaintiff*